**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lorenzo SPENCER, Defendant-Appellant.**

**No. 971, Docket 81–1493.**

United States Court of Appeals, Second Circuit.

Argued April 20, 1982.

Decided July 9, 1982.

See also, D.C., 522 F.Supp. 463.

---

Perry S. Reich, Kew Gardens, N. Y. (Stephen R. Mahler, Mahler & Harris, P. C., Kew Gardens, N. Y., on brief), for defendant-appellant.

Peter A. Norling, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Vivian Shevitz, Asst. U. S. Atty., Brooklyn, N. Y., on brief), for plaintiff-appellee.

Before OAKES, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

The question before us is whether the police—armed with a bench warrant issued on an unrelated misdemeanor charge—may enter a defendant's dwelling to search for him and, in his absence, legally seize the evidence used at his trial for bank robbery. We believe the answer is "yes" and thus affirm defendant's conviction.

## I

Lorenzo Spencer was charged in a five count indictment with two armed bank robberies involving separate branches of the Astoria Federal Savings and Loan Association in Queens, New York. The first two counts, arising from the May 5, 1981 robbery of the Kissena Boulevard Branch, charged defendant with violating 18 U.S.C. §§ 2113(a) and (d). Count five charged him with illegal receipt of 34 United States savings bonds taken during the same robbery, a violation of 18 U.S.C. § 641. Counts three and four charged defendant with violating the same subdivisions of § 2113 on May 14, 1981 in connection with the robbery of the Stratton Street Branch. Defendant was tried and convicted on all counts.

Testimony was adduced at trial that Spencer bore some resemblance to one of two individuals seen leaving the Kissena Boulevard Branch immediately after the May 5, robbery. Government exhibits included a fingerprint, lifted from the top of the vault barrier at the Stratton Street Branch shortly after the May 14 robbery, which fingerprint was identified as being defendant's. The strongest evidence against defendant, however, was that seized by the police when they entered his room in an apartment and there discovered ski masks, gloves, guns and ammunition and the savings bonds taken on May 5, 1981. This evidence was the subject of a suppression hearing before the district court; Judge Platt's denial of a motion to suppress is the single issue on appeal.

## II

The facts in this case as they pertain to the suppression issue may be simply stated. In the late afternoon on May 19, 1981, Thomas Van Pelt, a uniformed New York City Police Officer was on patrol in Queens when he was flagged down by a young female who identified herself as Dena Hogan. Hogan told the officer that she and her baby were living in a room with a male friend who kept guns there. She asked

Officer Van Pelt if he would remove the guns because she was afraid her baby might accidentally be injured. After further inquiry by the officer Hogan said that her friend "had something to do with banks." She told the officer that her friend "Lorenzo Spencer" was about 21 years old and was at home "right now." She informed the officer that they lived at 155–64 116th Drive, only a short block from where the conversation took place.

Before going to Spencer's room Officer Van Pelt went first to the police station where he ran the defendant's name through a computer. In doing so he discovered that there was an active bench warrant outstanding against Spencer. Van Pelt then proceeded to the address given him earlier by Hogan. From the time he spoke to Hogan about 35 minutes elapsed before he and two other uniformed officers arrived at defendant's home.

Spencer lived in a two-family building. He occupied a bedroom with Hogan and her daughter in the upstairs apartment which he shared with his grandfather, Bokin Boyd. The ground floor door to the apartment was unlocked and the officers proceeded up the stairs. Officer Van Pelt testified that he saw an elderly man, whom he identified at trial as Boyd, asked him whether Lorenzo Spencer lived there, and was told that he did. Boyd added, however, that he was not sure if Spencer was at home. When the police asked which room Spencer lived in, the elderly man pointed toward the rear of the apartment and indicated that the last bedroom was the defendant's.

The police searched the room for Spencer, looking under the bed and in the closet, but did not find him. When the closet door was opened by Officer Van Pelt, he observed a black plastic trash bag on the floor of the closet. He saw what appeared to be gun barrels sticking out through a hole in the black bag and therefore brought the bag out of the closet and over to the bed. He opened it and found a .30 caliber carbine, a .22 caliber revolver, a .32 caliber semi-automatic, two ski masks and four rubber gloves. Several of the guns were loaded. He also found 34 $50 United States savings bonds; the bonds were in numerical order with no name or address typed in where the owner's name would ordinarily appear. All of these items were seized and brought to the station house for inventory.

While looking in the closet, Van Pelt also observed a large opening leading to an attic crawl space. Other officers were summoned and an unsuccessful search was made of the attic to see if Spencer had hidden there. On June 25, 1981 Spencer was arrested by the Federal Bureau of Investigation and charged with the two bank robberies.

### III

In his argument that the district court erred in denying his motion to suppress the evidence seized by the police, the defendant raises several issues. He claims that the bench warrant upon which the search was predicated was issued without a determination of probable cause and without reason to believe that he was within his home, contrary to the holding in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Defendant also contends that *Payton* permits entrance into a suspect's home to effect his arrest only in felony cases, not for misdemeanors. Defendant further argues that, in any event, the police entry was unlawful because it was made without announcement of its purpose and the authority for it. Finally, he asserts that any evidence discovered in his room which was incriminatory as to the bank robberies was seized illegally.

We are not persuaded by these arguments. Instead, we believe that the existing bench warrant together with the facts known to the officers provided a sufficient basis to permit the intrusion into defendant's apartment, where the evidence of his involvement in the robberies was discovered.

In *Payton* the Supreme Court held unconstitutional warrantless arrests when the arrestee is in the sanctity of his home. The court stated that an arrest in a suspect's

home is permitted only when a warrant is obtained (i.e., where there is a judicial determination of probable cause to arrest) and when reason exists to believe that the suspect is within. *Payton*, 445 U.S. at 602–03, 100 S.Ct. at 1388. *Payton* makes clear that a person's Fourth Amendment rights are protected by interposing a neutral magistrate "between the zealous officer and the citizen." *Id.* at 602, 100 S.Ct. at 1388.

In this case a New York City criminal court judge issued the bench warrant when appellant failed to appear in court in connection with misdemeanor charges on which he had previously been arraigned. Such warrant, which may be executed anywhere in New York State, N.Y.Crim.Proc. Law § 530.70(1) (McKinney 1971), directs a police officer in a pending criminal court action

> to take into custody a defendant in such action who has previously been arraigned upon the accusatory instrument by which the action was commenced, and to bring him before such court. The function of a bench warrant is to achieve the court appearance of a defendant in a pending criminal action for some purpose other than his initial arraignment in the action.

N.Y.Crim.Proc. Law § 1.20(30) (McKinney 1981). The decision of the New York City criminal court judge to issue a bench warrant constituted a finding made by a neutral magistrate that Spencer had failed to appear in a pending criminal matter. We recognize that its issuance did not amount to a judicial finding of probable cause to arrest in the traditional sense—with respect to the bank robberies (i.e., that a crime had been committed and that defendant had committed it). Nonetheless, the police, armed with the warrant, had authority to find and seize Spencer anywhere they could find him for his failure to appear in court. Thus, the presence of the police in the defendant's room was pursuant to a direction made by a neutral magistrate. Defendant's rights under the Fourth Amendment require no more. *Payton*, 445 U.S. at 582 n. 17, 586 n. 24, 100 S.Ct. at 1377 n. 17, 1380 n. 24; *cf. Government of Virgin Islands v. Gereau*, 502 F.2d 914, 925 (3d Cir. 1974),

*cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975).

It must also be determined whether reason existed to believe that the suspect was within his home. Here the police officer was told by defendant's girlfriend that he was at home. The police arrived at defendant's home within 35 minutes. At the scene Spencer's grandfather confirmed that this was where the defendant lived, but said that he did not know if Spencer was at home. This provided a reasonable basis for the police to believe defendant might be within and justified their search for him there. We are satisfied that the officer's presence in defendant's home conformed to the requirements for such an intrusion as laid down in *Payton*.

Defendant further contends that an arrest permitted by *Payton* should be confined to a felony arrest. This contention is based on language in *Payton*, 445 U.S. at 602–03, 616, 100 S.Ct. at 1388, 1395 (White, J., dissenting) and *United States v. Reed*, 572 F.2d 412, 424 (2d Cir.), *cert. denied sub nom. Goldsmith v. United States*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978); *see also United States v. Johnson*, —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). We do not read such a limitation into those cases. In *Payton* the Supreme Court held that a warrantless entry by the police into a suspect's home to arrest him violates the Fourth Amendment, absent exigent circumstances. Our Court in *Reed* had earlier reached the same conclusion, 572 F.2d at 424. While both cases concededly involved felony arrests, neither holding limits its legal entrance only to felony cases. Significantly, in the more recent case of *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Court, in referring to *Payton*, placed no limitation on the kind of crime with which the suspect must be charged. In these cases, the courts, in striving to safeguard a suspect's Fourth Amendment rights when he is arrested at home, emphasized the necessity that a warrant be issued by a neutral magistrate. The concern has been to prevent the unreasonable seizure of a person or

property. In determining reasonableness, the nature of the underlying offense is of no moment.

Defendant seems to argue that we should grant a misdemeanor suspect blanket protection from arrest while such person remains at home. The maxim that "a man's home is his castle" has come to us from the early English common law through the corridors of time. The ancestry of this concept and its significance in our constitutional history are thoroughly explored in *Payton*, 445 U.S. at 591–98, 604–11, 100 S.Ct. at 1382–86, 1389–92. The discussion makes clear that the threshold of one's home, however, is not a boundary—like the Yalu River—beyond which a suspect has inviolate sanctuary. Instead this defendant, subject to the outstanding bench warrant, is not insulated by *Payton* from being arrested in his home, as long as the police had reason to believe he was there.

We turn to the last points raised with respect to the arrest. A bench warrant "must be executed in the same manner as a warrant of arrest, as provided in section 120.80." N.Y.Crim.Proc. Law § 530.70 (McKinney Supp. 1981–1982). New York Law further provides that an officer "may . . . enter any premises in which he reasonably believes the defendant to be present." N.Y.Crim.Proc. Law § 120.80 (McKinney 1981). Unless there are specified exigent circumstances, "[b]efore such entry, [the officer] must give, or make reasonable effort to give, notice of his authority and purpose to an occupant [of the premises]." *Id.*

The officers here complied with the notice provisions of section 120.80. The evidence reveals that Van Pelt, who was in uniform, announced himself as a police officer upon entry, and that he announced his purpose to Boyd, an occupant of the premises whom the officers met on the stairs. Such action is sufficient notice under the New York statute.

Further, once legitimately on the premises the evidence found in the black plastic trash bag was properly seized by the police because it was within their "plain view." The rationale under which the seizure of property in "plain view" is permitted has been satisfied in this case: the bench warrant issued by the independent magistrate justified the police presence in defendant's apartment and the discovery of the incriminating evidence by them was inadvertent. *Coolidge v. New Hampshire*, 403 U.S. 443, 467–69, 91 S.Ct. 2022, 2038–40, 29 L.Ed.2d 564 (1971); *see also, United States v. Liberti*, 616 F.2d 34, 37 (2d Cir.), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980).

Thus, we conclude that defendant's Fourth Amendment rights were not violated by the seizure of the evidence in his room and that the motion to suppress was properly denied.

## IV

Finally, appellant contends that counts one and three charging him with a violation of § 2113(a) (unarmed bank robbery) should have been merged into counts two and four charging him with a violation of § 2113(d) (armed bank robbery) upon conviction for the latter offense. Defendant has been sentenced to concurrent terms of 20 years on each of the bank robbery counts. For his illegal possession of the savings bonds defendant was given a ten year sentence to be served consecutively to those imposed on the robbery counts. The execution of this last sentence was suspended and defendant was placed on probation for five years to be served after his release from prison and parole on the robbery counts.

The government concedes that a judgment of conviction may not be entered on simultaneous convictions under subdivisions (a) and (d) of § 2113 where both arise from a single criminal act, as they do here. The lesser offense is deemed merged into the greater offense. *United States v. Evans*, 665 F.2d 54 (2d Cir. 1981); *United States v. Jenkins*, 665 F.2d 47 (2d Cir. 1981); *Grimes v. United States*, 607 F.2d 6 (2d Cir. 1979).

Since the district court sentenced appellant on all five counts we reverse and remand this case to the district court for it to

vacate Spencer's conviction for unarmed bank robbery under counts one and three of the indictment and the sentence imposed thereon. The judgment of conviction for violation of 18 U.S.C. § 2113(d) (armed bank robbery) under counts two and four and for violation of 18 U.S.C. § 641 (illegal receipt of stolen government property) under count five is affirmed.