**Robert C. HEINE, Plaintiff,**

v.

**Corporal CONNELLY, et al., Defendants.**

**Civ. A. No. 85–181 LON.**

United States District Court, D. Delaware.

Oct. 1, 1986.

---

**7.** The Court has been informed that the application was made on September 24, 1986.

Norman E. Levine of Levine and Thompson, Wilmington, Del., for plaintiff; Thomas H. Tropp, Terry S. Silva (argued) of Harris, Tropp & Smith, Media, Pa., of counsel.

H. Murray Sawyer, Jr. and Roger A. Akin (argued) of Sawyer & Akin, Wilmington, Del., for defendants Connelly, Gunning, Corrigan, Simpson, Spillan and Inman, in their individual capacities.

Michael F. Foster and John J. Polk (argued) of the Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

LONGOBARDI, District Judge.

Plaintiff Robert C. Heine has sued twenty-seven officials of the State of Delaware for contributing to his allegedly unlawful arrest and subsequent sexual assault by a prisoner trustee. Heine seeks relief pursuant to 42 U.S.C. § 1983 and the pendent state law doctrines of false arrest, false imprisonment, gross negligence and negligence. Six defendants—the two arresting officers and four of their supervisors—have moved for summary judgment in their individual capacities. They maintain that Heine's arrest and subsequent detention resulted from a valid capias, *i.e.*, a valid bench warrant, issued by the Court of Common Pleas. On the other hand, Heine claims that the arresting officers predicated the arrest and deprivation of his liberty upon inaccurate computer information that cannot constitute probable cause. He also alleges that the officers breached their

duty to bring him promptly before a magistrate. In addition, Heine claims that the supervisors acquiesced and/or participated in the procedures that caused these infractions.

## I. PROCEDURAL STAGE

Following service of the complaint, all Defendants moved to dismiss the claims brought against them in their official capacities. Six of these Defendants, Corporal Michael Connelly, Sergeant Michael Gunning, Colonel Daniel L. Simpson, Captain James R. Spillan, Captain Terrence Inman and Captain James Corrigan ("the six Defendants"), also moved for summary judgment in their individual capacities. Following the oral argument, Plaintiff stipulated that the complaint charged all Defendants in their individual capacities alone. Thus, only the motion filed by the six Defendants remains before the Court. The present record consists solely of the complaint, the briefs, the supporting affidavits and a handful of documents. No answers have been filed. Neither party has taken any discovery.[1] Plaintiff Heine has not moved under Rule 56(f) claiming that he is unable to properly resist Defendants' motion.

## II. FACTS

On a motion for summary judgment, the Court must determine whether there is a "genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In the process, the Court must "resolve any doubts as to the existence of genuine issues of fact against the moving part[y]. Moreover, inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 95 (3d Cir.1982). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, — U.S. ——, 106 S.Ct. 2505, 2509–10 (1986). A "dispute about a material fact is 'genuine' where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### A. Background

The events surrounding Heine's arrest are easily summarized. During March of 1983, Corporal Connelly developed Heine as a suspect in certain burglaries. At 7:00 p.m. on March 28, Heine complied with Connelly's request to appear at the Troop 1 station of the Delaware State Police. Connelly questioned Heine for nearly two hours but brought no charges relating to the burglary.

After concluding this interrogation, Connelly left the room. When he returned, Connelly allegedly said, "I got you." Heine Affidavit, Docket Item ("D.I.") 40, ¶ 9. Connelly then arrested Heine because a computer search had revealed an outstanding capias for Heine issued by the Court of Common Pleas ("CCP"). The veracity of this information represents the key issue in the case against the six Defendants. The Court will explore this issue in greater detail after explicating the balance of the relevant facts.

Heine told Connelly that the charges underlying the capias had been dropped in August, 1982. *Ibid.* at ¶ 12. At Heine's behest, the desk sergeant, Michael Gunning, called Heine's attorney, Gary Linarducci. *Ibid.* at ¶¶ 13, 14. Linarducci told both Connelly and Gunning that the charges had been dropped. Gunning allegedly told Linarducci that the State Police would house Heine at Troop 1 for the night and would call Linarducci before moving him. *Ibid.* at ¶ 16. Gunning apparently also told Linarducci that he lacked authority to release a fugitive named in a valid capias. Gunning Affidavit, D.I. 37A at ¶ 2. He also advised Linarducci to petition the court for withdrawal of the capias. *Ibid.*

---

1. The Court stayed discovery after briefing was completed. D.I. 42 (October 9, 1985). Nothing prevented either party from seeking discovery during the briefing.

at ¶ 3. Without informing Linarducci, the troopers later took Heine to the Gander Hill prison. Heine Affidavit, ¶ 17.[2] Heine alleges that he was sexually assaulted at Gander Hill by a prisoner trustee. Heine Affidavit ¶ 20. He was released the next day without appearing before a court. *Ibid.* at ¶ 21.

The gravamen of Heine's complaint against these six Defendants is the alleged inaccuracy of the computer information which indicated the outstanding capias. Heine asserts that the computer printout is in error because it shows the underlying charges to be criminal trespass and theft when the actual charges were criminal trespass in the second degree and terroristic threatening. A simple investigation, says Heine, would have revealed that the charges had been dropped and the capias should not have issued. Heine further alleges that his earlier efforts to correct the inaccuracy failed because of the inadequate procedures established by the supervisory Defendants.

In response, the troopers claim to have acted upon the outstanding capias which they allege was lodged at Troop 1. They also contend that the capias was valid both on its face and in fact, thus providing the necessary probable cause for detention.

It is clear from the arguments of the parties that the validity of the capias is the central issue in this case. Consequently, the Court will briefly outline the effect of a capias under Delaware law. The Court will then determine the validity of the capias issued for Heine's arrest.

### B. The Capias Under Delaware Law

The capias at issue in this case is essentially a bench warrant for the arrest of an accused who has failed to appear for a court date. The capias identifies the person wanted (*i.e.*, Heine), the reasons for the court's order, the original charges, the case numbers and the officer to whom it is issued. It then states:

2. The affidavit of the troop commander states that Troop 1 lacked adequate security for overnight detention at that time. Corrigan Affidavit, D.I. at ¶ 2.

TO THE SHERIFF or ANY CONSTABLE OF NEW CASTLE COUNTY, WE COMMAND that you take the above named person and safely keep him and bring him before one of our Judges at Wilmington, at the COURT OF COMMON PLEAS FOR NEW CASTLE COUNTY.

And have you then there this Writ.

WITNESS the Honorable Judge of the COURT OF COMMON PLEAS for New Castle County.

The capias concludes with a section labelled "RETURN" in which the date and source of return are to be noted.

The command language of the capias is given literal meaning by the Delaware courts. Delaware officers have the "duty to arrest the defendant as soon as possible upon learning that there [is] a capias out for him." *State v. Stephen J. Severin,* Cr.A. No. IN81–12–0102 and 0103, slip. op. (Del.Super. Mar. 23, 1982) (Balick, J.). The age of the capias does not affect its authority because "an unexecuted arrest warrant does not become a nullity." *Tiller v. State.,* Del.Supr., 257 A.2d 385, 388 (1969). The arresting officers are required by the capias to produce the defendant before the issuing court. *Fullman v. State,* Del. Supr., 389 A.2d 1292, 1295 (1978); *id.* at 1301 (Duffy, J., concurring). If the issuing court is closed when the suspect is arrested, the suspect may be held overnight or over a weekend. *See Fullman v. State,* 389 A.2d 1292.

### C. The Validity of This Capias

Heine's legal difficulties began on May 21, 1982, when a neighbor named Ronald J. Bilinski swore a complaint in the Justice of the Peace Court for New Castle County that charged Heine with criminal mischief in violation of 11 Del.C. § 811. The Court of Common Pleas assumed jurisdiction of the case.[3] The court assigned the case the number 82–06–3049 ("the '49 charge"). On

3. The facts enumerated in this paragraph are largely derived from certified documents submitted to the Court on March 11, 1986, by Plaintiff's counsel.

June 10, 1982, Heine answered the charges before Judge Bradley. He entered a plea of not guilty and waived trial by jury. Judge Bradley set the matter for trial on July 9. The court later continued the matter to August 11 at the State's request. The Court itself subsequently continued the case to September 22. On that date a disposition of *nolle prosequi* was entered for Heine both on case number 82–06–3049 and a second charge of terroristic threatening bearing case number 82–06–3050 ("the '50 charge").

In the interim, a second incident occurred between Heine and Bilinski. On July 23, 1982, Bilinski swore complaints in the Justice of the Peace Court for New Castle County which charged Heine with criminal trespass in the second degree and terroristic threatening. D.I. 44 at B–25, B–28. These acts violate 11 Del.C. § 822 and 11 Del.C. § 621 respectively. On July 25, 1982, Heine appeared before Justice of the Peace Ahern. D.I. 44 at B–29. He elected to stand trial in the Court of Common Pleas. *Ibid.* The Court of Common Pleas assigned the two charges case numbers MN82–07–37290–T ("the '29 charge") and MN82–07–37300–T ("the '30 charge"). The court set an arraignment date of August 13, 1982.

Heine did not appear on August 13. D.I. 44 at B–33. The Deputy Attorney General, Kevin A. O'Brien, requested that the cases be rescheduled until September 22, 1982.[4] O'Brien Affidavit, ¶ 1. A notation on the misdemeanor arraignments calendar of August 13 reflects this request. D.I. 44 at B–32. For unexplained reasons, the cases were nevertheless placed on the arraignment calendar for August 20. *Id.* at B–33;

O'Brien Affidavit at ¶ 2. The court sent a letter to Heine on August 13 which warned him that a second failure to appear on August 20 could result in the issuance of a bench warrant for his arrest. Heine failed to appear on August 20. *Id.* at B–33; O'Brien Affidavit at ¶ 2. The court then issued a capias for Heine's arrest. D.I. 44 at B–18 (copy of the capias); *id.* at B–33; O'Brien Affidavit at ¶ 2.

The face of the capias contains information vital to the outcome of this case. The capias reflects issuance to Trooper Mayfield of Troop 1. It also identifies the original charges as criminal trespassing in the second degree and terroristic threatening. *Ibid.* Most importantly, the capias specifies these charges as case numbers 82–07–3729, 3730. *Ibid.* The capias clearly resulted, therefore, from the charges filed by Bilinski on July 23. Certified court records submitted by Heine himself show that these charges remained open until March 29, 1983, the day *after* his arrest. At that same time, Judge Bradley received the original capias. In short, the certified documents provided by both sides establish that when Heine appeared at the Troop 1 station on March 28, 1983, the '29 and '30 charges remained open and the capias generated by Heine's failure to appear at the duly noticed hearing on August 20, 1982, remained outstanding.

## III. CLAIMS AGAINST THE ARRESTING TROOPERS

The first eight counts of Heine's prolix complaint charge Connelly and Gunning with violating 42 U.S.C. § 1983 and the state law doctrines of false arrest and false imprisonment. Heine essentially pursues

---

**4.** On the Court of Common Pleas document which reflects the history of case 82–06–3049, the clerk has recorded the following explanation of the continuance from August 11 to September 22: "To be heard w/comp. case." In his letter of March 11, 1986, Plaintiff's counsel has taken the extraordinary step of quoting the language this way: "To be heard w/comp. cases." (Emphasis added.) In reliance upon the plural he has added, Plaintiff's counsel argues that the notation "indicates an awareness that other charges which were outstanding were intended

to be heard at the same time." The implication of his comment is that the participants to the August 11 hearing believed that the '49 charges would be heard with the '29 and '30 charges. However, the calendar for September 22 belies that inference. It shows that on that date the court heard two charges against Robert Heine filed by Bilinski—the '49 and the '50 charges. It also heard a charge that Bilinski filed against one Wayne J. Heine. The notation on the '49 sheet can be understood as referring to either the '50 charge or the case against Wayne Heine.

two paths against the arresting troopers. First, Heine claims that his arrest lacked probable cause because the troopers "acted upon the [inaccurate] computer information alone and in spite of the Plaintiff's protests and confirmation of the inaccuracy by the Plaintiff's attorney." Brief for Plaintiff, D.I. 40 at 34. Second, Heine claims that his fourteen hour post-arrest detention violated his right to a prompt hearing before a magistrate.

## A. The Arrest

Counts I, II, V and VI charge that Troopers Connelly and Gunning are liable under 42 U.S.C. § 1983 for their negligent, grossly negligent and intentional arrest of Heine.[5] Heine alleges two ways in which the troopers deprived him of rights guaranteed by the fourth and fourteenth amendments. First, he contends that the troopers relied on inaccurate computer information which cannot provide the requisite probable cause for an arrest. Alternatively, Heine maintains that even accurate computer information fails to supply probable cause.

■ Heine's first objection to his arrest stands upon the unsupportable assertion that the computer printout reflects inaccurate information. As demonstrated, *supra* at 9, the capias which issued for Heine's arrest on August 20, 1982 remained outstanding on the night of March 28, 1983. Although the printout incorrectly reports the underlying charges attendant to the capias, the defect is meaningless. The troopers arrested Heine because of the capias. The capias was generated by Heine's separate offense against the court (*i.e.*, the failure to appear), not the underlying charges. To the extent that the printout indicated a valid capias, its veracity is unquestionable. Consequently, the Court finds inapposite cases from outside this Circuit which impose liability for arrests caused by inaccurate computer information.

■ Notwithstanding the accuracy of the printout, Heine claims that his arrest lacked probable cause because the troopers relied on computer information rather than a magistrate's warrant. The ready response is that the troopers did rely on a magistrate's warrant—the bench capias issued by a Judge sitting on the Court of Common Pleas. Corporal Connelly states that on March 28, 1983, he discovered the outstanding capias in the files of Troop 1. Affidavit of Michael Connelly, ¶ 6. In addition, the capias itself reflects issuance to Trooper Mayfield of Troop 1. Also, Trooper Hadley of Troop 1 states that he attempted to execute the capias in early 1983. Affidavit of Timothy Hadley, ¶¶ 2, 3. Captain Corrigan, the commanding officer of Troop 1, has certified that the capias was lodged in his files. Affidavit of James Corrigan, D.I. 38, ¶ 2. Nevertheless, Heine's brief claims that he "was arrested on the basis of the computer record even though [the] warrant was allegedly located at Troop I." Brief for Plaintiff, D.I. 40 at 44. Heine, however, cannot resist a properly supported motion for summary judgment with such a bald allegation. *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir.1984); *see Celotex Corp. v. Catrett*, —— U.S. ——, ——, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 908 (3d Cir.1984). Heine concedes that he remained in the interrogation room while Connelly checked the records. Affidavit of Robert Heine, D.I. 40 at ¶ 8. Heine, therefore, has no personal knowledge of what Connelly did and is engaged in mere speculation. In contrast, the troopers' position is supported by certified records and sworn statements based on personal knowledge. Heine failed to seek discovery which might impeach these statements in the three months between service of Defendants' opening brief and the Court's order staying discovery. Heine has also not moved under Rule 56(f) for an order permitting depositions or other discovery prior to the Court's

---

**5.** It appears that *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), bars this theory to the extent it sounds in negligence.

adjudication of this motion. Rather, Heine has clung to his assertion that "computer error" caused his arrest. Heine Affidavit at ¶ 22. Consequently, the Court concludes that the troopers did act upon a magistrate's warrant and, therefore, executed a constitutionally valid arrest.

Even if the Court assumes that the troopers acted upon the accurate computer printout alone, Heine's complaint would fail to allege the deprivation of a *constitutional* right. *See Daniels v. Williams,* ___ U.S. ___, 106 S.Ct. 662 (1986); *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). The Supreme Court has clearly established the right of police officers to make an arrest in sole reliance on a radio report that an arrest warrant is outstanding for the suspect. *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) ("We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin"). The arresting officer need not have personal knowledge of the facts supporting the probable cause determination of the magistrate. *See United State v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985) (discussing *Whiteley* in a decision that allows an officer to stop a suspect in reliance on a wanted flyer issued by another police department); *United States v. Robinson,* 536 F.2d 1298, 1300 (9th Cir. 1976); *United States v. Longmire,* 761 F.2d 411, 415 (7th Cir.1985). The arresting officer also is not required to have the arrest warrant in his possession. *United States v. Leftwich,* 461 F.2d 586, 592 (3d Cir.), *cert. denied,* 409 U.S. 915, 93 S.Ct. 247, 34 L.Ed.2d 178 (1972); *Gill v. United States,* 421 F.2d 1353, 1355 (5th Cir.1970);

Fed.R.Crim.P. 4(d)(3). These rules recognize "that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *Hensley,* 105 S.Ct. at 682, *quoting Robinson,* 536 F.2d at 1300. Such arrests only pass constitutional muster, however, if probable cause supports the warrant reported to the arresting officers. *Whiteley v. Warden,* 401 U.S. at 568, 91 S.Ct. at 1037; *see Hensley,* 105 S.Ct. at 682.

The foregoing cases support the constitutionality of the troopers' reliance on the accurate computer report of an outstanding capias for Heine's arrest. Like the radio bulletin approved in *Whiteley,* the computer printout at issue here merely facilitated the efficient dissemination of criminal record information. Contrary to Heine's unsupported assertions, the troopers did not rely on the computer information as the source of probable cause. The capias provided the probable cause. The computer merely informed the troopers that a judge of the Court of Common Pleas had already made the probable cause determination. The use of a computer to retrieve such information is no different than the use of a radio bulletin or wanted flyer. Consequently, the legality of the arrest stemming from computer information turns on whether the warrant indicated by the computer is supported by probable cause.[6] In the instant case, the existence of probable cause is beyond question. The Court of Common Pleas notified Heine of his August 20 court date. Heine did not appear. Because no more is necessary to determine probable cause for the offense charged, no constitutional right of Heine's was deprived.

---

**6.** Even if the warrant lacked probable cause in fact, its facial validity would probably insulate the arresting troopers from civil liability. *See Johnson v. City of St. Paul,* 634 F.2d 1146 (8th Cir.1980) (finding no section 1983 liability where the police arrested the wrong man in reliance on a radio report of an outstanding warrant). *United States v. Robinson,* 536 F.2d at 1299 ("A facially valid direction from one officer to another to stop a person or a vehicle insulates the complying officer from assuming

personal responsibility or liability for his act in obedience to the direction.") The rule established in *Malley v. Briggs,* ___ U.S. ___, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), would not apply here because, unlike *Malley,* these officers did not provide the affidavits from which the magistrate inferred probable cause. Rather, they executed the magistrate's determination of probable cause based on his own perception of Heine's absence.

■ The policy considerations discussed in *Hensley* and *Robinson* are equally applicable here. In those cases, the courts spoke of the importance of communication to effective law enforcement. *Hensley*, 105 S.Ct. at 682, *quoting Robinson*, 536 F.2d at 1300. The ability to retrieve criminal record information by computer has become the backbone of modern police communications. Courts possess a particularly acute need to communicate with police officers because they otherwise lack the power to enforce their processes. The need is rarely greater than when an accused fails to appear because the offense threatens the very integrity of the court. Those who evade the court's processes often flee the jurisdiction where they are sought. To require officers to have the actual arrest warrant would insulate such suspects from the reach of the law. Clearly, the courts must allow officers to act upon computer reports of arrest warrants.

The result reached by the Court today also accords with the decision reached by the Second Circuit in *United States v. Spencer*, 684 F.2d 220 (2d Cir.1982). There, the court refused to suppress evidence obtained pursuant to an arrest generated by computer information. The facts are apposite to this case. A citizen had alerted the arresting officer to the defendant's possible criminal behavior. A computer check revealed "an active bench warrant outstanding against [the defendant]." *Id.* at 222. The officer then followed the computer's suggestion that he check with Central Warrants.[7] *United States v. Spencer*, 522 F.Supp. 463, 465 (E.D.N.Y. 1981), *rev'd in part on other grounds*, 684 F.2d 220 (2d Cir.1982). Central Warrants confirmed the bench warrant. The officer then entered the defendant's home to arrest him. The court refused to suppress the evidence acquired in the search for defendant because "[t]he decision of the New York City criminal court judge to issue a bench warrant constituted a finding made by a neutral magistrate that [defendant] had failed to appear in a pending criminal matter." *Spencer*, 684 F.2d at 223. Consequently, the court ruled that "the police, armed with the warrant, had authority to find and seize Spencer anywhere they could find him for his failure to appear in court.... [T]he presence of the police in the defendant's room was pursuant to a direction made by a neutral magistrate. Defendant's rights under the fourth amendment require no more." *Id.* The court then rejected the proposition, also argued here by Heine, that the police should have acted differently because the underlying charges were misdemeanors. *Id.* at 224. The Second Circuit's opinion thus explicates the authority possessed by officers seeking to enforce an outstanding bench warrant revealed by a computer check. Like defendant Spencer, Plaintiff Heine possessed no constitutional protection against the actions of the police. The troopers simply enforced the law as they were correctly commanded to do by the Court of Common Pleas. Heine's complaint fails, therefore, to state a section 1983 claim for unlawful arrest.

**B. Post-Arrest Detention**

Counts I, II, IV and V of Heine's complaint charge Connelly and Gunning with negligent, grossly negligent and intentional imprisonment in violation of his fourth and fourteenth amendment rights to a prompt hearing before a magistrate. Heine was arrested on the capias at 9:00 p.m. on March 28, 1983. At that hour, the Court of Common Pleas was closed. Heine claims, however, that the troopers should have brought him to a justice of the peace at Gander Hill prison. Heine's argument fails for two reasons. First, the fourth and fourteenth amendments only "requir[e] the States to provide a fair and reliable deter-

**7.** The arresting troopers could not have made such an investigation here because the verifying authorities were unavailable at 9:00 p.m. *See United States v. Longmire*, 761 F.2d at 420 (at some unspecified point, *"if circumstances permit,"* an officer should check the status of the information in a police bulletin) (emphasis added); *see also Baker v. McCollan*, 443 U.S. at 145–46, 99 S.Ct. at 2695 ("we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence.")

mination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan,* 443 U.S. at 142, 99 S.Ct. at 2694. "[A] person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143, 99 S.Ct. at 2694. The Court has already explained the propriety of the probable cause determination underlying the capias at issue in this case. *See supra* at 1513. Hence, Heine's claim appears barred by *Baker.*

■ Heine is also incorrect for other reasons. The capias ordered the troopers to bring Heine to the Court of Common Pleas. This order reflects Delaware law that a capias remains outstanding until returned to the issuing court. The Justice of the Peace Court of Delaware is inferior to the Court of Common Pleas. A justice has no authority to cancel an outstanding capias issued by the Court of Common Pleas. Consequently, the Troopers had no obligation to engage in the fruitless gesture of producing Heine to a judicial officer without authority to assess Heine's culpability.

■ Heine also suffered no constitutional deprivation from the length of his detention (roughly fourteen hours). In *Patzig v. O'Neil,* 577 F.2d 841 (3d Cir.1978), the court rejected plaintiff's due process claims because, *inter alia,* there was "no unnecessary delay" involved in her five hour pre-arraignment detention. Similarly, the capias for Heine's arrest was returned to the Court of Common Pleas the next morning. It could not have been returned earlier.

■ Heine's brief on the imprisonment issue also raises an issue of "pretextual" arrest. Specifically, he alleges that the troopers "used the [eight month old] capias as a vehicle by which to arrest and imprison the Plaintiff unconstitutionally." Brief for Plaintiff, D.I. 40 at 47. The Court infers that Heine believes the troopers used the capias to detain him because the burglary investigation failed to bear fruit. As Judge Sweet has written in a similar context,[8] "[w]hatever the officers' real motives for making the arrest may have been, the existence of th[e] warrant supplied them with probable cause for arrest, and that is sufficient to defeat defendant's claim." *United States v. Francis,* No. 80–Cr–400, slip op. (S.D.N.Y. Oct. 29, 1980).

In sum, none of Heine's allegations concerning his imprisonment state a constitutional violation.

## IV. STATE CLAIMS

Counts III and IV of Heine's complaint charge Connelly with violating the state law doctrines of false arrest and false imprisonment. Counts VII and VIII make the same charges against Corrigan. Heine apparently relies on the doctrine of pendent jurisdiction to bring these claims before the Court. The doctrine has long been recognized as one of discretion. *Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The Supreme Court has advised that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.; Broderick v. Associated Hosp. Serv. of Philadelphia,* 536 F.2d 1, 8 n. 25 (3d Cir.1976). Although a significant number of courts have retained and decided state claims despite a pretrial dismissal of the federal claims, *see e.g., Lentino v. Fringe Emp. Plans, Inc.,* 611 F.2d 474 (3d Cir.1979) (federal claim dropped on the morning of trial), *see generally* C. Wright, A. Miller, E. Cooper *Federal Practice and Procedure* § 3567.1, the Court believes the teaching of *Gibbs* to be the more prudent course in this case. Most of the claims remaining in this litigation concern the

8. Information acquired during a drug investigation caused the *Francis* officer to run a computer check on the defendant. The check revealed an outstanding warrant. Several months later, the officers stopped the defendant for questioning. They arrested him on the outstanding warrant. The defendant claimed that his arrest was a mere pretext for incarceration on the drug investigation.

events and procedures at Gander Hill prison. The circumstances surrounding Heine's constitutionally valid arrest and detention will not bear on the disposition of Heine's other claims. Consequently, further proceedings in this Court concerning the arrest would be an inefficient use of the federal judicial resources.[9] We will, therefore, dismiss without prejudice the State law claims found in Counts III, IV, VII and VIII.

## V. CLAIMS AGAINST THE SUPERVISORS

Counts IX, X and XI charge Corrigan, Simpson and ten members of the Delaware Council on Police Training with violating 42 U.S.C. § 1983 by failing to properly train and supervise their subordinates and by acquiescing in the procedures used against Heine. Defendant Spillan is a member of the Delaware Council on Police Training. The complaint against these three Defendants is predicated upon the wrongfulness of the arresting troopers' conduct. Because this Court has held that Connelly and Gunning committed no constitutional wrong, we will grant summary judgment in favor of these three Defendants.

Defendant Inman's status on this motion presents a slightly different situation. He is sued as a voting member of the Board of Managers of the Delaware Criminal Justice Information System ("DELJIS"). The Court does not believe that the briefs and record adequately deal with the involvement of DELJIS in all facets of this case. We will, therefore, hold Inman's motion in abeyance until further briefing and supporting affidavits are provided.

---

9. While it appears from the Court's recitation of the facts that the troopers may be entitled to summary judgment on these counts, the parties failed to adequately brief the state claims. The Court, therefore, declines to address the merits of the motion on these issues.