555 P.2d 362
**STATE of Arizona, Appellee,**
v.
**Charles HIRALEZ, Appellant.**
**No. 1 CA–CR 1668.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 31, 1976.

Rehearing Denied Sept. 30, 1976.

**394**

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edmund T. Allen, III, Deputy Public Defender, Phoenix, for appellant.

SCHROEDER, Judge.

After submitting his case to the trial court on the basis of the preliminary hearing and the chemist's report, appellant was found guilty of growing marijuana and placed on probation for two years, conditioned on the payment of a fine and surcharge. On appeal, he raised initially the single question of whether the evidence found in his house should have been suppressed because the police officers were on his premises illegally. Upon this Court's invitation, appellant filed a supplemental brief questioning the validity of the sentence in the light of *State v. Pitts,* 20 Ariz. App. 390, 548 P.2d 1202 (1 CA–CR 1183, April 22, 1976, review granted June 22, 1976, S.Ct. No. 3547 PR). Appellant additionally urged that the trial court erroneously failed to advise appellant of the range of sentencing.

The facts, taken in the light most favorable to supporting the trial court's finding, are as follows. On May 7, 1975, at approximately 9:50 p. m., two uniformed police officers arrived at 1326 West Papago, Phoenix, to serve an arrest warrant on Melody Ann Hiralez. Melody had been cited for a traffic violation and had failed to appear. At the time of her citation, she gave the Papago Street address as her residence.

The police officers had attempted to serve the warrant in April, but, at that time, appellant told the police that although Melody lived there she was not at home. During the April meeting, the police officers told appellant that there was a warrant outstanding for Melody and that Melody should "take care of it." When Melody did not respond to this request, the officers returned on May 7.

Upon arrival at the house on May 7, the police officers knocked on the front door. After a delay of several minutes, an uni-

dentified individual peeked out from behind a curtain. The police officers knocked again and appellant came from around the back of the building to meet them.

The police officers advised appellant that they were again looking for Melody and asked if she were in the house. Appellant nervously glanced back towards the house and replied, "Uh, no, I don't believe she is, no".

The police officers asked appellant if they could look in the house for Melody and appellant replied, "I guess so." Appellant then led the police officers around the house to the back door. While they were walking, appellant asked the police officers if they had a search warrant. The police replied that they had an arrest warrant for Melody and because they had reason to believe she was in the house, this was sufficient. Appellant responded, "Okay", and permitted the officers to enter.

Upon entry, the police officers saw a metal tray containing in excess of 60 marijuana seeds and a 13-inch marijuana plant. It appears that while walking back towards the house, the police had noticed plants which they thought might be marijuana and had intended to inspect them later. After arresting appellant, the police looked outside the house and found an additional 145 growing marijuana plants. The trial court denied appellant's motion to suppress this evidence.

Appellant does not challenge the discovery of the marijuana once the police were inside his house. Rather, he contends that the police had no right to enter his house and, therefore, the evidence found as a result of that entry should be suppressed. Because (1) the record below is unclear as to the exact circumstances under which the marijuana plants outside the house were discovered; (2) the State does not develop this argument on appeal; and (3) we feel the initial entry was proper, we do not rule on the question of whether the discovery of the plants outside the house was proper

without regard to the validity of the initial entry.

Accordingly, we turn to the validity of the entry into appellant's house. A.R.S. § 13–1411 provides:

"Right of officer to break into building

"An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, as provided in § 13–1403, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if the officer is refused admittance after he has announced his authority and purpose."

Appellant does not contend that this statute is unconstitutional and concedes that the standard set forth in the statute is the test to be applied in this case. In *United States v. McKinney*, 379 F.2d 259, 263 (6th Cir. 1967), the court applied the reasonable belief standard in a similar fact situation. The court stated:

"An arrest warrant is validly issued only when a magistrate is convinced that there is probable cause to believe that the named party has committed an offense. This determination, together with the inherent mobility of the suspect, would justify a search for the suspect provided the authorities reasonably believe he could be found on the premises searched."

Therefore, the sole question we must decide is whether the policemen had sufficient grounds reasonably to believe that Melody was in the house. We feel that the facts support such a reasonable belief in this case.

Preliminarily, it must be noted that Melody resided at the Papago Street address. This is not a case where the police entered the home of a third party in search of a suspect. Further, the hour (9:50 p. m.) and the day of the week (Wednesday) are times when the officers could reasonably expect an individual to be home.

In addition, because the police had previously told appellant about the outstanding warrant and Melody did not respond, it was reasonable to conclude that Melody was avoiding the police. Where it appears that an individual is avoiding arrest, police officers need not simply accept at face value the statement of another individual that the suspect is not at home. At some point it becomes not only the officer's right, but the officer's duty, to look in the house for the suspect.

Finally, the circumstances surrounding appellant's answering the door, including the surreptitious moving of the curtain, the delay in answering the knock of uniformed officers, appellant's nervousness, and furtive glances at the house, provided a reasonable basis for the police officers' belief that Melody was inside.

Federal courts have permitted law enforcement officials to enter the residence of a suspect under fact situations less persuasive than the one in the current case. In *Martone v. United States,* 396 F.2d 229 (1st Cir. 1968), the police entered the suspect's residence at 6:00 a. m. There were no other facts to indicate that the suspect was at home, but the court concluded that the fact that the house was appellant's residence plus the hour of the morning was sufficient to establish probable cause to believe that the suspect was in the house.

In *United States v. Jones,* 475 F.2d 723 (5th Cir. 1973), the F.B.I. traced the suspect from New Orleans to Cleveland where they believed he was staying with his wife. After obtaining an arrest warrant for the suspect and a search warrant for the house, the agents went to the wife's house. Although the wife said her husband was not there, the agents told the wife they had a search warrant and entered the house. The court subsequently held that the search warrant was invalid. Nonetheless, the court upheld the entry and seizure of items in plain view because the entry was justified for the purpose of arresting Jones. *See also Lane v. United States,* 148 F.2d 816 (5th Cir. 1945) (officers with arrest warrant had right to look around house and garage for person they sought).

In light of the foregoing authority and the facts of the current case, we believe that police officers were justified in their belief that Melody was in the house and that their entry into the house was legal. Once inside the house, the officers had a plain view of the marijuana plant, and it was appropriate for them to seize it as contraband. Accordingly, the trial court did not err in denying appellant's motion to suppress.

Upon this Court's review of the record on appeal, it was noted that the court suspended imposition of sentence for two years but ordered appellant to pay a fine of $500 and a surcharge of $50 as a condition of probation. In view of this Court's holding in *State v. Pitts, supra,* the appellant was invited to submit a supplemental brief directed to the validity of the sentence. The State was given an opportunity to respond. The appellant, in his supplemental brief, has urged that the facts in this case fall within the holding of *State v. Pitts,* and that the sentence is, therefore, invalid. The State has not responded. We agree with appellant's contention, and therefore remand for resentencing.

Appellant's supplemental brief raises and additional issue as well. Appellant contends that the trial court's failure to advise the appellant of the minimum and maximum range of sentencing prior to appellant's submission of the case was in violation of *State v. Crowley,* 111 Ariz. 308, 528 P.2d 834 (1974). *Crowley,* however, held only that the defendant had to be advised of the constitutional rights he was waiving in connection with submission on the basis of the preliminary hearing transcript. This Court's opinion in *State v. Jackson,* 24 Ariz.App. 308, 537 P.2d 1366 (1975), held squarely that when a defendant submits a case on the basis of the preliminary hearing transcript, there is no additional requirement that he be advised of the range of sentencing. Appellant here suggests that *Jackson* somehow has been

overruled by *State v. Gaines,* 113 Ariz. 206, 549 P.2d 574 (1976). *Gaines,* however, reaffirmed the holding of *State v. Payne,* 110 Ariz. 506, 520 P.2d 1130 (1974), that where submission on the record is not tantamount to a guilty plea, the record need show only that the defendant was advised that he was giving up his right to trial by jury and that the whole issue of guilt or innocence would be decided on the submitted record. Nothing in *State v. Gaines* either expressly or implicitly casts any doubt on the validity of *State v. Jackson,* or remotely suggests that the holding of *Crowley* be expanded. We, therefore, find no error in connection with the court's acceptance of the plea.

The judgment is affirmed; remanded for resentencing.

JACOBSON, P. J., and WREN, J., concur.