IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2003-0254 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| TONY DEWAYNE SMITH, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20031152

Honorable John E. Davis, Judge

REMANDED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and David Wood                                   Phoenix
                                                          Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Stephan J. McCaffery                                             Tucson
                                                         Attorneys for Appellant

E C K E R S T R O M, Judge.

¶1        After a bench trial, the trial court found appellant Tony Dewayne Smith guilty of possessing a deadly weapon as a prohibited possessor in violation of A.R.S. § 13-3102 and sentenced him to a presumptive term of 4.5 years in prison. On appeal, Smith contends the trial court erred in denying his motion to suppress the handgun, asserting that law enforcement officers unlawfully entered his home and conducted a search. We conclude the trial court failed to apply the correct standard in determining whether the officers had lawfully entered Smith's residence, and we remand the case to permit a redetermination of the issue under the proper standard.

## BACKGROUND

¶2        We view the evidence presented at the suppression hearing and the reasonable inferences therefrom in the light most favorable to upholding the ruling. *State v. Rodriguez*, 205 Ariz. 392, ¶ 34, 71 P.3d 919, 929 (App. 2003). At that hearing, the parties stipulated that Pima County Sheriff's Department officers, Sergeant Murphy and Deputy Heath, had possessed a valid warrant to arrest Smith when they approached his residence, a trailer located on rugged, isolated, desert terrain near Arivaca. Because they knew Smith had evaded arrest in the past, the officers watched the trailer for approximately fifteen minutes from a nearby hillside to assure that he was present. When they saw Smith carrying grocery bags into the trailer, the officers approached the trailer in two separate squad cars from different directions. As soon as Smith saw one of the officers, he fled from the trailer into the desert, leaving "drag marks" in the soil so Deputy Heath was able to follow his path.

2

¶3        While Heath pursued Smith, Murphy handcuffed and interviewed three people who were standing in the area of Smith's trailer.[1] Sergeant Murphy then joined the search for Smith. The officers pursued Smith on foot separately for about forty-five minutes, leaving their patrol cars at his trailer. Deputy Heath testified that he had followed footprints in a sandy wash that began in the same location where the drag marks ended. He followed the footprints for about one hundred fifty yards before losing them after the tracks circled back toward the area of the trailer. Unable to locate Smith in the desert, the officers returned to his trailer, knocked on the door, and announced their presence. When they received no response, they entered the trailer and found the prohibited weapon and other contraband.

¶4        According to Heath, the general direction of the last visible footprints, coupled with the fact that Murphy had not been watching the trailer the entire time, had caused the officers to enter the trailer to "make sure Smith had not re-entered" it. According to Murphy, the officers had entered the trailer because they had believed Smith "may have circled back" and, therefore, had "reason to believe he may have" returned to the trailer.

¶5        Smith moved to suppress the evidence, arguing that the officers could not lawfully enter his residence, even though they possessed an arrest warrant, without probable cause to believe he was within the trailer. Smith asserted they had lacked such cause. In a

---

[1]The officers disagreed whether those people were released before or after Sergeant Murphy joined Heath's chase of Smith. According to Deputy Heath, they were still in handcuffs when he returned to the trailer after pursuing Smith. Sergeant Murphy testified, however, that he had released them before he had joined Heath in the unsuccessful pursuit of Smith.

terse ruling, the trial judge denied Smith's motion, stating: "The deputies had a valid arrest warrant for the Defendant and they believed he may have returned to his trailer home. Therefore, their entry was lawful." The court did not provide any further factual findings or conclusions of law. Smith now challenges that ruling.

## DISCUSSION

¶6 In reviewing the denial of a motion to suppress evidence, we defer to the trial court's factual determinations, but the ultimate ruling is a conclusion of law we review *de novo*. *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). The United States Supreme Court has "consistently held that the entry into a home to conduct a search or make an arrest is unreasonable . . . unless done pursuant to a warrant" or exigent circumstances are present. *Steagald v. United States*, 451 U.S. 204, 211-12, 101 S. Ct. 1642, 1647, 68 L. Ed. 2d 38, 45 (1981).

¶7 Here, the officers had a valid warrant to arrest Smith but not to search his home. However, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives *when there is reason to believe the suspect is within*." *Payton v. New York,* 445 U.S. 573, 603, 100 S. Ct. 1371, 1388, 63 L. Ed. 2d 639, 661 (1980) (emphasis added).[2] Smith contends this standard

---

[2]In *Steagald*, 451 U.S. at 213, 101 S. Ct. at 1648, 68 L. Ed. 2d at 51, the Court held that a search warrant is required when officers seek to enter the home of a third party to arrest someone else pursuant to a warrant. This case involved Smith's own residence, however, so *Payton*, not *Steagald*, applies. In this case, Smith does not argue that the trailer was not his residence or that the officers needed a search warrant. *But see United States v.*

4

prohibits officers from entering a private residence to execute an arrest warrant unless they have probable cause, based on an objective assessment of the totality of the circumstances, to believe the suspect is within. Smith asserts the trial court erred because: (1) it implicitly upheld the search of his residence based on the mere possibility that he might be found therein, and (2) because it anchored its analysis on the subjective views of the officers rather than on an objective assessment of whether the officers had possessed adequate cause to enter his home, given the totality of the circumstances.[3]

¶8        The state counters that, once in possession of an arrest warrant, the officers needed only a reason to believe that Smith "*might* be hiding inside" to lawfully enter his trailer. (Emphasis added.) In so doing, the state endorses the trial court's implied conclusion that the *mere possibility* of officers finding a suspect within his or her residence should be adequate to authorize the officers' entry when they possess an arrest warrant. *See The Oxford*

---

*Underwood*, 717 F.2d 482, 484 (9th Cir. 1983) (for purposes of determining whether rights were violated, no distinction between third-party home and suspect's own residence).

[3]Smith was on probation at the time the officers entered his home. Moreover, the arrest warrant the officers sought to execute by entering Smith's home apparently arose from his alleged violations of probation and was issued at the request of his probation officer. We note that probationary status may reduce a defendant's expectation of privacy and freedom from police searches. *See United States v. Knights*, 534 U.S. 112, 119-20, 122 S. Ct. 587, 591-92, 151 L. Ed. 2d 497 (2001); *Portillo v. United States District Court*, 15 F.3d 819, 823 (9th Cir. 1994); *State v. Turner*, 142 Ariz. 138, 142, 688 P.2d 1030, 1034 (App. 1984). Because the effect of Smith's probationary status on the appropriate standard for lawful entry was not raised by the state below or on appeal, because it was not addressed by the trial court, and because we do not possess an adequate record of Smith's probation, we do not address that issue.

*Dictionary and Thesaurus* 946 (Am. ed. 1996) (defining "might" or "may" as "expressing possibility").

¶9 Although numerous state and federal appellate courts have addressed what level of cause officers must have to satisfy the reason-to-believe standard set forth in *Payton*, the United States Supreme Court has not amplified its analysis of the question. *See* 3 Wayne R. LaFave, *Search and Seizure* § 6.1(a), at 226 (3d ed. 1996) ("Just what [the reason-to-believe standard] means continues to be a matter of considerable uncertainty."); *see also United States v. Magluta*, 44 F.3d 1530, 1534 (11th Cir. 1995) (noting that the Supreme Court has failed to further define the reasonable-belief standard set forth in *Payton*). Only one Arizona court has addressed the issue in a case that predated *Payton* by four years and that rested its analysis on an Arizona statute.[4] *State v. Hiralez*, 27 Ariz. App. 393, 395, 555 P.2d 362, 364 (1976). There, Division One applied the same reason-to-believe standard that the Court would eventually adopt in *Payton*, but, as in *Payton*, did not define it further. *Hiralez*, 27 Ariz. App. at 395, 555 P.2d at 364.

¶10 Thus, neither the United States Supreme Court nor any Arizona court has squarely addressed the primary question presented by the trial court's order in this case: whether officers possess a reason to believe that a suspect is within his or her residence when circumstances suggest that the suspect "may" be found there, or whether that belief must be

---

[4]*See* former A.R.S. § 13-1411, now A.R.S. § 13-3891. 1977 Ariz. Sess. Laws, ch. 142, § 134. The statute, of course, must comply and be interpreted consistently with federal and state constitutional principles.

based instead on circumstances that demonstrate that the suspect is "probably" within the premises. We conclude that the explicit commands of the United States and Arizona Constitutions, the language of the *Payton* standard, and the weight of relevant case authority all compel the conclusion that the reason-to-believe standard requires a level of reasonable belief similar to that required to support probable cause.

¶11      Preliminarily, we observe that the standard the trial court applied in evaluating the lawfulness of the search departs from the wording of the standard set forth in *Payton*. As noted, *Payton* authorizes officers who possess a valid arrest warrant to enter a residence in which the suspect lives "when there is reason to believe the suspect is within." 445 U.S. at 603, 100 S. Ct. at 1389, 63 L. Ed. 2d at 661. By contrast, the trial court found the officers' entry into Smith's residence lawful because "they believed he *may have* returned to his trailer home." (Emphasis added.) In support of that ruling, the state similarly argues that the reason-to-believe standard was met under the facts of this case because the officers had believed Smith "*might be*" hiding inside his trailer.[5] (Emphasis added.) But the *Payton* standard contains no such conditional language. Rather, it requires that officers possess a reasonable belief that a suspect "*is*" within the residence before they enter. *Id.* at 603, 100 S. Ct. at 1388, 63 L. Ed. 2d at 661.

---

[5]During oral argument, the state retreated from this position and conceded that the trial court's use of the conditional tense does not track the language of the *Payton* standard. The state argued, however, that the evidence presented at the suppression hearing would have justified the officers' entry even if the court had used the standard required by *Payton*.

¶12 Although the Court did not use the term "probable cause" in describing the condition precedent to entry of a suspect's residence, and although it clarified that officers need not acquire a separate magisterial finding that a suspect is likely within the residence, its reason-to-believe standard bears a striking parallel to the Court's own previous articulation of the probable-cause standard. *Payton*, 445 U.S. at 603, 100 S. Ct. at 1389, 63 L. Ed. 2d at 661. In *United States v. Watson*, 423 U.S. 411, 422, 96 S. Ct. 820, 827, 46 L. Ed. 2d 598, 608 (1976), a case specifically referred to in *Payton*, the Court defined probable cause to arrest as "*reasonable cause to believe* that the person to be arrested *has* committed a felony." (Emphasis added.) Our state supreme court has described probable cause in essentially the same fashion. *State v. Spears*, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996) ("'The police have probable cause to arrest when *reasonably trustworthy information* and circumstances would *lead a person* of reasonable caution to believe an offense *has* been committed by the suspect.'") (emphasis added), *quoting State v. Moorman*, 154 Ariz. 578, 582, 744 P.2d 679, 683 (1987). Thus, the *Payton* reason-to-believe standard echoed the probable-cause standard in use at that time, *Watson*, and parallels the probable-cause standard used in Arizona today. *Spears.*

¶13 Federal and state appellate courts that have addressed the reason-to-believe standard set forth in *Payton* have disagreed whether that standard should be explicitly characterized as equivalent to the probable-cause standard. *Compare United States v. Gorman*, 314 F.3d 1105, 1111-15 (9th Cir. 2002) (concluding reasonable-belief standard of

8

*Payton* embodies the same standard of reasonableness inherent in probable cause), *and State v. Blanco*, 614 N.W.2d 512, 516 (Wis. Ct. App. 2000) (explicitly requiring probable cause to believe suspect is home), *with Valdez v. McPheters*, 172 F.3d 1220, 1224-25 (10th Cir. 1999) (criticizing Ninth Circuit authority that had required showing of probable cause to believe defendant resided at location where arrest warrant executed); *United States v. Route*, 104 F.3d 59, 62 (5th Cir. 1997) (distinguishing reasonable belief and probable cause); *Commonwealth v. Silva*, 802 N.E.2d 535, 540 n.6 (Mass. 2004) (same); *and Green v. State*, 78 S.W.3d 604, 612 (Tex. Ct. App. 2002) (same).

¶14      But the dispute has been more anchored in semantics than substance. Those courts that have distinguished reasonable belief from probable cause have done so not because those standards require differing levels of certainty necessary to justify a police action. Rather, they have done so because "probable cause" has become a term of art and has traditionally engendered a need for an additional magisterial finding to authorize police action. *E.g., Route*, 104 F.3d at 62; *Magluta*, 44 F.3d at 1534-35; *Green*, 78 S.W.3d at 612. In the same breath that they distinguish reason to believe from probable cause, those courts concede that the reason-to-believe standard requires that the officers reasonably believe that "'"the suspect is *probably* within"'" the premises. *Route*, 104 F.3d at 62 (emphasis added), *quoting United States v. Woods*, 560 F.2d 660, 665 (5th Cir. 1977), *quoting United States v. Cravero*, 545 F.2d 406, 421 (5th Cir. 1976); *accord Magluta*, 44 F.3d at 1535; *see also Green*, 78 S.W.3d at 612; *Valdez*, 172 F.3d at 1224-25, 1228 (distinguishing reason-to-

believe standard from probable-cause standard but finding that officers had possessed reasonable belief because they had concluded suspect "would likely be present inside").

¶15 Thus, the case authority does not uniformly equate the reason-to-believe standard with the probable-cause standard. But the weight of that authority supports the crux of Smith's contention—that officers must have an objectively reasonable belief that a suspect is *probably* home before they may enter it to execute an arrest warrant. The state has cited no case that authorizes entry into a home to execute an arrest warrant based on the mere suspicion or mere possibility that a suspect "might" be present.

¶16 As Smith points out, the distinction is far from academic. The state's interpretation of the reason-to-believe standard, with its use of conditional language, parallels the reasonable-suspicion standard of *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889, 911 (1968), which the Supreme Court adopted for an entirely different, limited purpose. In *Terry*, the Court held that

> where a police officer observes unusual conduct which leads him *reasonably to conclude* in light of his experience that criminal activity *may* be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

10

*Id.* at 30-31, 88 S. Ct. at 1884-85, 20 L. Ed. 2d at 911 (emphasis added). The Court adopted the *Terry* standard as a specific exception to probable cause largely to ensure the safety of law enforcement officers; the exception only justifies a limited public encounter with, and intrusion upon, a suspect. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325-26, 75 L. Ed. 2d 229, 238 ("An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop [and] . . . the investigative methods employed should be the least intrusive means reasonably available to dispel the officer's suspicion in a short period of time."); *State v. Winegar*, 147 Ariz. 440, 447, 711 P.2d 579, 586 (1985) ("*Terry* stops are tolerated as an exception to the probable cause requirement of the Fourth Amendment because they are brief and as narrowly circumscribed as possible.").

¶17        By contrast, the reason-to-believe standard set forth in *Payton* guards against unwarranted intrusions into a suspect's home. As the Court observed in that case, "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton*, 445 U.S. at 585-86, 100 S. Ct. at 1379-80, 63 L. Ed. 2d at 650, *quoting United States v. United States Dist. Court*, 407 U.S. 297, 313, 92 S. Ct. 2125, 2134, 32 L. Ed. 2d 752, 764 (1972). The Court continued:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."

11

*Id.* at 589-90, 100 S. Ct. at 1381-82, 63 L. Ed. 2d at 653 (alterations in *Payton*), *quoting Silverman v. United States*, 365 U.S. 505, 511, 81 S. Ct. 679, 683, 5 L. Ed. 2d 734, 739 (1961). Our own constitution contains a similarly specific prohibition against unwarranted governmental invasions into a person's home, Ariz. Const. art. II, § 8 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."), and our supreme court has vigilantly enforced that prohibition. *State v. Bolt*, 142 Ariz. 260, 265, 689 P.2d 519, 524 (1984), *approved as modified*, 142 Ariz. 260, 269, 689 P.2d 519, 528 (1984) (finding home entry without warrant and without exigent circumstances unlawful under "our own constitutional provision").

¶18    Thus, when we apply the protections of the Fourth Amendment as interpreted by the United States Supreme Court and the protections of our state constitution, we cannot equate the officers' intrusion into the sanctity of Smith's residence to the limited investigative intrusions authorized by *Terry* and its progeny. Therefore, we reject the state's suggestion that we interpret the reason-to-believe standard set forth in *Payton* as authorizing entry into Smith's home based merely on the officers' reasonable suspicion that he "might" be found within.

¶19    For all the above reasons, we conclude that the trial court erred when it found the officers' entry into Smith's trailer lawful merely because the officers believed he might have returned there. A mere possibility is not enough. *Cf. State v. Piller*, 129 Ariz. 93, 96, 628 P.2d 976, 979 (App. 1981) (to avoid "knock and announce" requirement before entering

12

residence pursuant to arrest warrant based on firearms in the premises, officers must "reasonably believe" weapon will be used against them, "and this belief must be based on specific facts and not on broad, unsupported presumptions"). To comply with the requirements of the Fourth Amendment as set forth in *Payton*, officers may not enter a suspect's home to execute an arrest warrant unless they possess a reasonable belief that the suspect is probably home.

¶20 Given our conclusion that the trial court applied an inappropriate standard in determining the lawfulness of the officers' entry into Smith's home, we need not address whether the court's terse ruling inappropriately anchored its factual conclusions on the subjective beliefs of the officers. The trial court found that the officers had "believed" Smith might be in the trailer. In so doing, the court neglected to state whether it had found those beliefs to be objectively reasonable based on the totality of the circumstances. On remand, it should do so. *See Valdez*, 172 F.3d at 1225-26. ("[E]ntry into a residence pursuant to an arrest warrant is permitted when 'the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the[ir] totality, must warrant a *reasonable* belief . . . that the suspect is within the residence at the time of entry.'") (emphasis added), *quoting Magluta*, 44 F.3d at 1535; *see also State v. Spears*, 184 Ariz. at 284 (requiring similar reasonableness finding to support probable cause to search).

¶21 Because Smith challenged the credibility of the officers' testimony based on their behavior once they entered the trailer, because it is not our function to evaluate the

13

demeanor of witnesses, and because the record before us does not contain pertinent facts bearing on whether the officers had a reasonable belief that Smith was within the trailer, we remand the case to the trial court for a hearing to evaluate the evidence under the appropriate standards. *See State v. Barber*, 823 P.2d 1068, 1076 (Wash. 1992) (remanding case for further factual findings when those gleaned from suppression hearing insufficient for appellate review of stop's lawfulness).

_____
PETER J. ECKERSTROM, Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Chief Judge



_____
JOHN PELANDER, Presiding Judge

14