Fernando Gonzales, Jr. v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-169-CR

FERNANDO GONZALES, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Fernando Gonzales, Jr. of capital murder, and the trial court sentenced him to a mandatory life sentence.  In his first three issues, Gonzales claims that many of his constitutional rights were violated when his trial counsel waived final argument.  In issues four through six, Gonzales complains that the trial court erred by overruling his motion to suppress and by admitting two allegedly highly prejudicial photographs.  We will affirm.

II.  Factual Background

On October 17, 2002, a private citizen flagged down a Fort Worth police officer and informed him that the clerk of a nearby convenience store had been shot.  Officers immediately responded to O’Malley’s Food Store and discovered the cash register open and Nasir Meraj, the store clerk, lying dead in the back of the store.  Meraj had apparently been shot multiple times.  Officers cleared the store and requested the assistance of other police officers, an ambulance, and the fire department. 

A video surveillance camera in the store recorded parts of the robbery. Police were unable, however, to identify the suspects depicted on the video.  A few days later, on October 23, 2002, detectives received a Crime Stoppers tip identifying Gonzales as one of the individuals responsible for the robbery and murder at O’Malley’s.  Police arrested Gonzales, and he subsequently confessed to participating in the robbery and to shooting Meraj.

Gonzales pleaded not guilty to the charge of capital murder.  During the trial on the merits, the trial court denied Gonzales’s motion to suppress and admitted his written confession.  The jury found Gonzales guilty, and the trial court sentenced him to an automatic life sentence. 

III.  Motion to Suppress

In his fourth issue, Gonzales argues that the trial court erred when it overruled his motion to suppress his statement because “[i]t is obvious from the dire consequences of an automatic life sentence that the confession was involuntary.”  Gonzales contends that “[t]he record as a whole indicates that Appellant was deceived into thinking the statement was necessary and would somehow benefit him when the exact opposite is the truth.”  The State maintains that Gonzales’s statement is clearly admissible. 

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total deference to the trial court’s ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Best
, 118 S.W.3d at 861-62.  However, we review de novo a trial court’s rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses.  
Johnson
, 68 S.W.3d at 652-53.

In determining whether the trial court’s decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996); 
Green v. State
, 78 S.W.3d 604, 608 (Tex. App.—Fort Worth 2002, no pet.).  However, this general rule is inapplicable where the suppression issue is consensually relitigated by the parties during the trial on the merits.  
Rachal
, 917 S.W.2d at 809; 
Green
, 78 S.W.3d at 608.  Here, the trial court granted Gonzales a running objection to the trial court’s ruling immediately after it denied the motion to suppress.  Therefore, we limit our scope of review to the evidence presented at the suppression hearing.  
See James v. State
, 102 S.W.3d 162, 170 (Tex. App.—Fort Worth 2003, pet ref’d.).

The statement of an accused may be used in evidence if it was freely and voluntarily made without compulsion or persuasion.  
Tex. Code Crim. Proc. Ann.
 art. 38.21 (Vernon 1979).  The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition.  
Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref’d).  A confession is involuntary if circumstances show that the defendant’s will was “overborne” by police coercion.  
Creager v. State
, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  In other words, a statement is involuntary if the record reflects “official, coercive conduct of such a nature” that any statement obtained thereby is “unlikely to have been the product of an essentially free and unconstrained choice by its maker.”  
Alvarado v. State
, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). In the instant case, the trial court issued findings of fact and conclusions of law in which it found and concluded that Gonzales freely, knowingly, and intentionally waived his rights.  The trial court further found that the statement was made under voluntary conditions and that it was admissible as a matter of law and fact before the jury. 

Michel Carroll, a homicide detective, was the only witness to testify at the motion to suppress hearing.  Carroll interviewed Gonzales and took his statement.  Carroll testified that the first thing she did upon coming into contact with Gonzales was to read him his 
Miranda 
warnings.  After each warning was read to Gonzales, he responded that he understood it.  Moreover, Gonzales marked his initials beside each warning and signed the waiver of rights form. After Gonzales had been advised of his rights, he confessed to committing the robbery and murder at O’Malley’s Food Store.  Detective Carroll then began the process of taking down a written statement from Gonzales. Gonzales dictated his statement to a secretary as the secretary typed.  After giving the statement, Gonzales initialed each paragraph and was given an opportunity to make any corrections.  Carroll testified that Gonzales never objected to giving a statement, that he was not under the influence of alcohol or drugs, that he did not have any injuries or complaints, and that his overall demeanor was very calm and cooperative. 

Because the trial court is the sole judge of the credibility of the witnesses and the weight of their testimony, we hold that the trial court’s findings are supported by the record.  
Ross
, 32 S.W.3d at 855.  Based on these facts, the trial court properly concluded that Gonzales freely, knowingly, and intelligently waived his rights, that his written statement was voluntary, and that he was not coerced or deceived into giving his statement.  
See 
Tex. Code Crim. Proc. Ann.
 arts. 38.21, 38.22 (Vernon 1979 & Supp. 2004-05); 
Alvarado
, 912 S.W.2d at 211.  Thus, the trial court did not err when it denied Gonzales’s motion to suppress.  
See Carmouche
, 10 S.W.3d at 327.  We overrule Gonzales’s fourth issue.

IV.  Admissibility of Photographs

In his fifth and sixth issues, Gonzales argues that the trial court erred by admitting two photographs offered by the State—one of Meraj with his family and another in which the medical examiner reconstructed Meraj’s face in order to determine the type of wound inflicted by the gunshot.  Gonzales contends that the State introduced the photograph of Meraj with his family in order to invoke sympathy and inflame the minds of the jury.  With respect to the autopsy photograph, Gonzales argues that there was other testimony to indicate the type of wound Gonzales suffered and that the photograph’s prejudicial effect outweighed its probative value.  The State maintains that both photographs were properly admitted.

The admissibility of a photograph is within the sound discretion of the trial judge.  
Paredes v. State
, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004).  We will not disturb a trial court’s ruling admitting or excluding evidence so long as its decision falls within the “zone of reasonable disagreement.”  
See Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  Under Texas Rule of Evidence 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  
Tex. R. Evid.
 403.  A Rule 403 analysis by the trial court should include, but is not limited to, the following considerations: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent’s need for the evidence.  
See Erazo v. State
, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).  In considering whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, a court may consider the following factors: the number of photographs, the size, whether they are in color or black and white, whether they are gruesome, whether any bodies are clothed or naked, and whether the body has been altered by autopsy.  
Reese v. State
, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000).  Overall, the photograph must be helpful to the jury; “[i]f there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects.”  
Erazo
, 144 S.W.3d at 491-92.

Generally, with some limitations, photographs are admissible if verbal testimony of the matters depicted in the photographs is also admissible.  
See Ramirez v. State
, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991).  Where pictorial evidence will help the jury to understand verbal testimony, such as the technical language used by a medical doctor in describing the injuries sustained by a victim of a crime, the photograph is generally admissible.  
See Harris v. State
, 661 S.W.2d 106, 107 (Tex. Crim. App. 1983).  In terms of autopsy photographs, they are generally admissible unless they depict mutilation caused by the autopsy itself.  
See Rayford v. State
, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003).  Photographs that depict the nature, location, and extent of a wound have been declared probative enough to outweigh any prejudicial effect.  
See Legate v. State
, 52 S.W.3d 797, 807 (Tex. App.—San Antonio 2001, pet. ref’d).

We first consider State’s Exhibit 3, the photograph of Meraj and his family.  Mohammad Farhan Mirza, the brother of Meraj’s wife, testified that Meraj was married and that he had three children, Sasha, Humza, and Unaiz. Meraj’s wife and the three children did not testify at the trial.  The evidence and exhibits further demonstrate that Gonzales shot Meraj in the head with a twelve-gauge shotgun using a particular round of ammunition that is commonly referred to as a “deer slug.”  This had the effect of completely destroying Meraj’s face and a large portion of his head.  Thus, because Meraj was unidentifiable after sustaining the gunshot, State’s Exhibit 3 was admissible to identify him as the victim.  
See Matchett v. State
, 941 S.W.2d 922, 931 (Tex. Crim. App. 1996) (explaining photograph of decedent with friends admissible for identification purposes).  This was the only photograph introduced of Meraj and his family; cumulative photographs of this nature were not introduced.  
See Reese
, 33 S.W.3d at 241.  Our examination of the photograph and record leads us to conclude that it did not have the effect of invoking sympathy or inflaming the minds of the jury.  We hold that the probative value of State’s Exhibit 3 is not substantially outweighed by its prejudicial effect, if any.  
See 
Tex. R. Evid.
 403.  Thus, the trial court did not abuse its discretion by admitting State’s Exhibit 3.  
See Paredes
, 129 S.W.3d at 539.  We overrule Gonzales’s fifth issue.  

State’s Exhibit 78 is a photograph of a portion of Meraj’s reconstructed face.  The photograph only shows Meraj’s face from the eyes up; his entire face is not visible.  The medical examiner testified that he “re-approximate[d] the wound” in an effort to determine the position of the wound and the direction from which the bullet had come.  The medical examiner testified that “it was a round wound and it had radial lacerations around it,” indicative of a contact wound.
(footnote: 2)  When asked by counsel for the State whether the photograph would help in describing the wound as a contact wound, the medical examiner responded affirmatively.  Accordingly, because the medical examiner’s testimony was admissible, and because the photograph would assist the jury, the photograph was admissible unless its probative value was outweighed by any prejudicial effect.  
Ramirez
, 815 S.W.2d at 647.

We hold that the probative value of the photograph was not greatly outweighed by its prejudicial effect, if any.  The photograph depicts a reconstruction, not a mutilation caused by the autopsy. 
See Rayford
, 125 S.W.3d at 529.  The photograph also depicts the nature, location, and extent of the wound, as testified to by the medical examiner.  
See Legate
, 52 S.W.3d at 807.  Furthermore, State’s Exhibit 78 was introduced during the testimony of the medical examiner and likely had the effect of helping the jury understand the medical examiner’s testimony concerning the nature of a contact wound.  
See
 
Erazo
, 144 S.W.3d at 491-92;
 Harris
, 661 S.W.2d at 107.  In addition to reflecting the testimony of a number of State’s witnesses, the photograph also helps to show the extent of the brutal, violent crime that was committed without impressing the jury in some irrational, yet indelible, way.  Thus, we conclude that the photograph is not “so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of the case after viewing it.”  
See Tidrow v. State
, 916 S.W.2d 623, 631 (Tex. App.—Fort Worth 1996, no pet.).  Accordingly, the trial court did not abuse its discretion when it admitted State’s Exhibit 78.  
Paredes
, 129 S.W.3d at 539.  We overrule Gonzales’s sixth issue.

V.  Ineffective Assistance/Waiver of Final Argument

In his first and second issues, Gonzales argues that in addition to allowing Gonzales’s trial counsel to waive closing argument, the trial court erred when it failed to require trial counsel to obtain a signed waiver from Gonzales authorizing his counsel to waive closing argument.  Gonzales contends that an explanation must be set forth in the record for counsel’s waiver of final argument in order for there to be a legitimate waiver.  In his third issue, Gonzales argues that the trial court erred by not granting a mistrial after Gonzales’s trial counsel waived closing argument.  The State contends that the record is insufficient to establish Gonzales’s trial counsel’s alleged ineffectiveness.

We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that 
his 
counsel's performance was deficient; second, appellant must show the deficient performance prejudiced the defense. 
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 813.  Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Id.
 at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

In the present case, trial counsel for Gonzales affirmatively waived closing argument; the trial court did not deny him the opportunity to present a closing argument.  The State presented compelling evidence of Gonzales’s guilt, and it is highly doubtful whether a final argument would have made any difference in the outcome of the case.  
See Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064. 
 Moreover, trial counsel’s decision to waive closing argument may have been a strategic decision in order to prevent the State from making a more persuasive argument in rebuttal.  
See Ransonette v. State
, 550 S.W.2d 36, 41 (Tex. Crim. App. 1976) (reasoning that waiver of final argument at punishment phase was trial strategy); 
Salinas v. State
, 773 S.W.2d 779, 782-83 (Tex. App.—San Antonio 1989, pet. ref’d) (holding waiver of final argument at punishment stage “an exercise of reasonable professional judgment”).  Trial counsel’s decision to waive final argument without first obtaining Gonzales’s consent is also a decision left solely to the discretion of his attorney.  Notwithstanding this, 
the record is silent as to why trial counsel for Gonzales elected to waive closing argument.  Although Gonzales filed a motion for new trial, a hearing was not held on the motion.  Consequently, Gonzales’s allegation of ineffective assistance is not firmly founded in the record, and the record does not affirmatively demonstrate the alleged ineffectiveness. 
 See Thompson
, 9 S.W.3d at 813.  
Accordingly, Gonzales has not overcome the strong presumption that his trial counsel rendered adequate assistance.  
See Strickland
, 466 U.S. at 
690, 104 S. Ct. at 2066.  We overrule Gonzales’s first and second issues.
(footnote: 3)
 In Gonzales’s third issue, he complains of the trial court’s failure to grant a mistrial.  
Gonzales did not request a mistrial—instead, the trial court did not 
sua sponte 
declare a mistrial—and Gonzales complains of this alleged error for the first time on appeal.  Accordingly, error is not preserved on this point.
(footnote: 4)  
See 
Tex. R. App. P.
 33.1(a)(1).  We overrule Gonzales’s third point.

VI.  Conclusion

Having overruled all of Gonzales’s issues, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: March 3, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
The medical examiner stated, “[T]he head wound was a contact wound of the medial forehead, meaning in the center of the forehead, and basically collapsed the skull, ejected the brain and I found fragments of what appeared to be a shotgun slug embedded in the neck.” 

3: Gonzales also claims that his counsel’s waiver of closing argument violates article 2.03 of the Texas Code of Criminal Procedure, article I, section 10 of the Texas Constitution, and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by depriving him of fundamental rights.  We have not located, and Gonzales has not cited, case law supporting these contentions.  For this reason, and because these arguments were not raised by motion for new trial in the trial court, we will not address them.  
See 
Tex. R. App. P.
 33.1(a)(1), 38.1(h); 
see also
 
Mendez v. State
, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); 
Rhoades v. State
, 934 S.W.2d 113, 120-21 (Tex. Crim. App. 1996).   

4:
A trial judge has the power to declare a mistrial 
sua sponte 
when a manifest necessity exists.  
See Torres v. State
, 614 S.W.2d 436, 442 (Tex. Crim. App. [Panel Op.] 1981).  This is clearly not such a case.  
See Hill v. State
, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002) (“Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error.”).