COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-169-CR
  
  
FERNANDO 
GONZALES, JR.                                                   APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 297TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        A 
jury convicted Appellant Fernando Gonzales, Jr. of capital murder, and the trial 
court sentenced him to a mandatory life sentence.  In his first three 
issues, Gonzales claims that many of his constitutional rights were violated 
when his trial counsel waived final argument.  In issues four through six, 
Gonzales complains that the trial court erred by overruling his motion to 
suppress and by admitting two allegedly highly prejudicial photographs.  We 
will affirm.
II. Factual 
Background
        On 
October 17, 2002, a private citizen flagged down a Fort Worth police officer and 
informed him that the clerk of a nearby convenience store had been shot.  
Officers immediately responded to O’Malley’s Food Store and discovered the 
cash register open and Nasir Meraj, the store clerk, lying dead in the back of 
the store.  Meraj had apparently been shot multiple times.  Officers 
cleared the store and requested the assistance of other police officers, an 
ambulance, and the fire department.
        A 
video surveillance camera in the store recorded parts of the robbery.  
Police were unable, however, to identify the suspects depicted on the 
video.  A few days later, on October 23, 2002, detectives received a Crime 
Stoppers tip identifying Gonzales as one of the individuals responsible for the 
robbery and murder at O’Malley’s.  Police arrested Gonzales, and he 
subsequently confessed to participating in the robbery and to shooting Meraj.
        Gonzales 
pleaded not guilty to the charge of capital murder.  During the trial on 
the merits, the trial court denied Gonzales’s motion to suppress and admitted 
his written confession.  The jury found Gonzales guilty, and the trial 
court sentenced him to an automatic life sentence.
III. Motion to 
Suppress
        In 
his fourth issue, Gonzales argues that the trial court erred when it overruled 
his motion to suppress his statement because “[i]t is obvious from the dire 
consequences of an automatic life sentence that the confession was 
involuntary.”  Gonzales contends that “[t]he record as a whole 
indicates that Appellant was deceived into thinking the statement was necessary 
and would somehow benefit him when the exact opposite is the truth.”  The 
State maintains that Gonzales’s statement is clearly admissible.
        We 
review a trial court’s ruling on a motion to suppress evidence under a 
bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 
327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997).  In reviewing the trial court’s decision, we do not 
engage in our own factual review. Romero v. State, 800 S.W.2d 539, 543 
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. 
App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial 
judge is the sole trier of fact and judge of the credibility of the witnesses 
and the weight to be given to their testimony.  State v. Ross, 32 
S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total 
deference to the trial court’s ruling on (1) questions of historical fact and 
(2) application-of-law-to-fact questions that turn on an evaluation of 
credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652-53 
(Tex. Crim. App. 2002); Best, 118 S.W.3d at 861-62.  However, we 
review de novo a trial court’s rulings on mixed questions of law and fact if 
they do not turn on the credibility and demeanor of witnesses.  Johnson, 
68 S.W.3d at 652-53.
        In 
determining whether the trial court’s decision is supported by the record, we 
generally consider only evidence adduced at the suppression hearing because the 
ruling was based on it rather than evidence introduced later.  Rachal v. 
State, 917 S.W.2d 799, 809 (Tex. Crim. App.), cert. denied, 519 U.S. 
1043 (1996); Green v. State, 78 S.W.3d 604, 608 (Tex. App.—Fort Worth 
2002, no pet.).  However, this general rule is inapplicable where the 
suppression issue is consensually relitigated by the parties during the trial on 
the merits. Rachal, 917 S.W.2d at 809; Green, 78 S.W.3d at 
608.  Here, the trial court granted Gonzales a running objection to the 
trial court’s ruling immediately after it denied the motion to suppress.  
Therefore, we limit our scope of review to the evidence presented at the 
suppression hearing.  See James v. State, 102 S.W.3d 162, 170 (Tex. 
App.—Fort Worth 2003, pet ref’d.).
        The 
statement of an accused may be used in evidence if it was freely and voluntarily 
made without compulsion or persuasion.  Tex. Code Crim. Proc. Ann. art. 38.21 
(Vernon 1979).  The determination of whether a confession is voluntary is 
based on an examination of the totality of the circumstances surrounding its 
acquisition.  Reed v. State, 59 S.W.3d 278, 281 (Tex. App.—Fort 
Worth 2001, pet. ref’d).  A confession is involuntary if circumstances 
show that the defendant’s will was “overborne” by police coercion.  Creager 
v. State, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  In other words, 
a statement is involuntary if the record reflects “official, coercive conduct 
of such a nature” that any statement obtained thereby is “unlikely to have 
been the product of an essentially free and unconstrained choice by its 
maker.”  Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 
1995).
        In 
the instant case, the trial court issued findings of fact and conclusions of law 
in which it found and concluded that Gonzales freely, knowingly, and 
intentionally waived his rights.  The trial court further found that the 
statement was made under voluntary conditions and that it was admissible as a 
matter of law and fact before the jury.
        Michel 
Carroll, a homicide detective, was the only witness to testify at the motion to 
suppress hearing.  Carroll interviewed Gonzales and took his 
statement.  Carroll testified that the first thing she did upon coming into 
contact with Gonzales was to read him his Miranda warnings.  After 
each warning was read to Gonzales, he responded that he understood it.  
Moreover, Gonzales marked his initials beside each warning and signed the waiver 
of rights form.
        After 
Gonzales had been advised of his rights, he confessed to committing the robbery 
and murder at O’Malley’s Food Store.  Detective Carroll then began the 
process of taking down a written statement from Gonzales.  Gonzales 
dictated his statement to a secretary as the secretary typed.  After giving 
the statement, Gonzales initialed each paragraph and was given an opportunity to 
make any corrections.  Carroll testified that Gonzales never objected to 
giving a statement, that he was not under the influence of alcohol or drugs, 
that he did not have any injuries or complaints, and that his overall demeanor 
was very calm and cooperative.
        Because 
the trial court is the sole judge of the credibility of the witnesses and the 
weight of their testimony, we hold that the trial court’s findings are 
supported by the record.  Ross, 32 S.W.3d at 855.  Based on 
these facts, the trial court properly concluded that Gonzales freely, knowingly, 
and intelligently waived his rights, that his written statement was voluntary, 
and that he was not coerced or deceived into giving his statement.  See 
Tex. Code Crim. Proc. Ann. arts. 
38.21, 38.22 (Vernon 1979 & Supp. 2004-05); Alvarado, 912 S.W.2d at 
211.  Thus, the trial court did not err when it denied Gonzales’s motion 
to suppress.  See Carmouche, 10 S.W.3d at 327.  We overrule 
Gonzales’s fourth issue.
IV. 
Admissibility of Photographs
        In 
his fifth and sixth issues, Gonzales argues that the trial court erred by 
admitting two photographs offered by the State—one of Meraj with his family 
and another in which the medical examiner reconstructed Meraj’s face in order 
to determine the type of wound inflicted by the gunshot.  Gonzales contends 
that the State introduced the photograph of Meraj with his family in order to 
invoke sympathy and inflame the minds of the jury.  With respect to the 
autopsy photograph, Gonzales argues that there was other testimony to indicate 
the type of wound Gonzales suffered and that the photograph’s prejudicial 
effect outweighed its probative value.  The State maintains that both 
photographs were properly admitted.
        The 
admissibility of a photograph is within the sound discretion of the trial 
judge.  Paredes v. State, 129 S.W.3d 530, 539 (Tex. Crim. App. 
2004).  We will not disturb a trial court’s ruling admitting or excluding 
evidence so long as its decision falls within the “zone of reasonable 
disagreement.”  See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. 
Crim. App. 1991) (op. on reh’g).  Under Texas Rule of Evidence 403, 
relevant evidence may be excluded if its probative value is substantially 
outweighed by the danger of unfair prejudice.  Tex. R. Evid. 403.  A Rule 403 
analysis by the trial court should include, but is not limited to, the following 
considerations: (1) the probative value of the evidence; (2) the potential to 
impress the jury in some irrational, yet indelible, way; (3) the time needed to 
develop the evidence; and (4) the proponent’s need for the evidence.  See 
Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). In considering 
whether the probative value of a photograph is substantially outweighed by the 
danger of unfair prejudice, a court may consider the following factors: the 
number of photographs, the size, whether they are in color or black and white, 
whether they are gruesome, whether any bodies are clothed or naked, and whether 
the body has been altered by autopsy.  Reese v. State, 33 S.W.3d 
238, 241 (Tex. Crim. App. 2000).  Overall, the photograph must be helpful 
to the jury; “[i]f there are elements of a photograph that are genuinely 
helpful to the jury in making its decision, the photograph is inadmissible only 
if the emotional and prejudicial aspects substantially outweigh the helpful 
aspects.”  Erazo, 144 S.W.3d at 491-92.
        Generally, 
with some limitations, photographs are admissible if verbal testimony of the 
matters depicted in the photographs is also admissible.  See Ramirez v. 
State, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991).  Where pictorial 
evidence will help the jury to understand verbal testimony, such as the 
technical language used by a medical doctor in describing the injuries sustained 
by a victim of a crime, the photograph is generally admissible.  See 
Harris v. State, 661 S.W.2d 106, 107 (Tex. Crim. App. 1983).  In terms 
of autopsy photographs, they are generally admissible unless they depict 
mutilation caused by the autopsy itself.  See Rayford v. State, 125 
S.W.3d 521, 529 (Tex. Crim. App. 2003).  Photographs that depict the 
nature, location, and extent of a wound have been declared probative enough to 
outweigh any prejudicial effect.  See Legate v. State, 52 S.W.3d 
797, 807 (Tex. App.—San Antonio 2001, pet. ref’d).
        We 
first consider State’s Exhibit 3, the photograph of Meraj and his 
family.  Mohammad Farhan Mirza, the brother of Meraj’s wife, testified 
that Meraj was married and that he had three children, Sasha, Humza, and Unaiz.  
Meraj’s wife and the three children did not testify at the trial.  The 
evidence and exhibits further demonstrate that Gonzales shot Meraj in the head 
with a twelve-gauge shotgun using a particular round of ammunition that is 
commonly referred to as a “deer slug.”  This had the effect of 
completely destroying Meraj’s face and a large portion of his head.  
Thus, because Meraj was unidentifiable after sustaining the gunshot, State’s 
Exhibit 3 was admissible to identify him as the victim.  See Matchett v. 
State, 941 S.W.2d 922, 931 (Tex. Crim. App. 1996) (explaining photograph of 
decedent with friends admissible for identification purposes).  This was 
the only photograph introduced of Meraj and his family; cumulative photographs 
of this nature were not introduced.  See Reese, 33 S.W.3d at 
241.  Our examination of the photograph and record leads us to conclude 
that it did not have the effect of invoking sympathy or inflaming the minds of 
the jury.  We hold that the probative value of State’s Exhibit 3 is not 
substantially outweighed by its prejudicial effect, if any.  See Tex. R. Evid. 403. Thus, the trial court 
did not abuse its discretion by admitting State’s Exhibit 3.  See 
Paredes, 129 S.W.3d at 539.  We overrule Gonzales’s fifth issue.
        State’s 
Exhibit 78 is a photograph of a portion of Meraj’s reconstructed face.  
The photograph only shows Meraj’s face from the eyes up; his entire face is 
not visible.  The medical examiner testified that he “re-approximate[d] 
the wound” in an effort to determine the position of the wound and the 
direction from which the bullet had come.  The medical examiner testified 
that “it was a round wound and it had radial lacerations around it,” 
indicative of a contact wound.[2]  When asked by 
counsel for the State whether the photograph would help in describing the wound 
as a contact wound, the medical examiner responded affirmatively.  
Accordingly, because the medical examiner’s testimony was admissible, and 
because the photograph would assist the jury, the photograph was admissible 
unless its probative value was outweighed by any prejudicial effect.  Ramirez, 
815 S.W.2d at 647.
        We 
hold that the probative value of the photograph was not greatly outweighed by 
its prejudicial effect, if any.  The photograph depicts a reconstruction, 
not a mutilation caused by the autopsy.  See Rayford, 125 S.W.3d at 
529.  The photograph also depicts the nature, location, and extent of the 
wound, as testified to by the medical examiner.  See Legate, 52 
S.W.3d at 807.  Furthermore, State’s Exhibit 78 was introduced during the 
testimony of the medical examiner and likely had the effect of helping the jury 
understand the medical examiner’s testimony concerning the nature of a contact 
wound.  See Erazo, 144 S.W.3d at 491-92; Harris, 661 
S.W.2d at 107.  In addition to reflecting the testimony of a number of 
State’s witnesses, the photograph also helps to show the extent of the brutal, 
violent crime that was committed without impressing the jury in some irrational, 
yet indelible, way.  Thus, we conclude that the photograph is not “so 
horrifying or appalling that a juror of normal sensitivity would necessarily 
encounter difficulty rationally deciding the critical issues of the case after 
viewing it.”  See Tidrow v. State, 916 S.W.2d 623, 631 (Tex. 
App.—Fort Worth 1996, no pet.).  Accordingly, the trial court did not 
abuse its discretion when it admitted State’s Exhibit 78. Paredes, 129 
S.W.3d at 539.  We overrule Gonzales’s sixth issue.
V. Ineffective 
Assistance/Waiver of Final Argument
        In 
his first and second issues, Gonzales argues that in addition to allowing 
Gonzales’s trial counsel to waive closing argument, the trial court erred when 
it failed to require trial counsel to obtain a signed waiver from Gonzales 
authorizing his counsel to waive closing argument.  Gonzales contends that 
an explanation must be set forth in the record for counsel’s waiver of final 
argument in order for there to be a legitimate waiver.  In his third issue, 
Gonzales argues that the trial court erred by not granting a mistrial after 
Gonzales’s trial counsel waived closing argument.  The State contends 
that the record is insufficient to establish Gonzales’s trial counsel’s 
alleged ineffectiveness.
        We 
apply a two-pronged test to ineffective assistance of counsel claims. Strickland 
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson 
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant 
must show that his counsel's performance was deficient; second, appellant must 
show the deficient performance prejudiced the defense.  Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.
        In 
evaluating the effectiveness of counsel under the first prong, we look to the 
totality of the representation and the particular circumstances of each 
case.  Thompson, 9 S.W.3d at 813.  The issue is whether 
counsel's assistance was reasonable under all the circumstances and prevailing 
professional norms at the time of the alleged error.  See Strickland, 
466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed 
to have rendered adequate assistance and made all significant decisions in the 
exercise of reasonable professional judgment.”  Id. at 690, 104 S. 
Ct. at 2066.  An allegation of ineffective assistance must be firmly 
founded in the record, and the record must affirmatively demonstrate the alleged 
ineffectiveness.  Thompson, 9 S.W.3d at 813.  Our scrutiny of 
counsel's performance must be highly deferential, and every effort must be made 
to eliminate the distorting effects of hindsight.  Strickland, 466 
U.S. at 689, 104 S. Ct. at 2065.
        The 
second prong of Strickland requires a showing that counsel's errors were 
so serious that they deprived the defendant of a fair trial, i.e., a trial whose 
result is reliable.  Id. at 687, 104 S. Ct. at 2064.  In other 
words, appellant must show there is a reasonable probability that, but for 
counsel's unprofessional errors, the result of the proceeding would have been 
different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable 
probability is a probability sufficient to undermine confidence in the 
outcome.  Id. The ultimate focus of our inquiry must be on the 
fundamental fairness of the proceeding whose result is being challenged.  Id. 
at 697, 104 S. Ct. at 2070.
        In 
the present case, trial counsel for Gonzales affirmatively waived closing 
argument; the trial court did not deny him the opportunity to present a closing 
argument.  The State presented compelling evidence of Gonzales’s guilt, 
and it is highly doubtful whether a final argument would have made any 
difference in the outcome of the case.  See Strickland, 466 U.S. at 
687, 104 S. Ct. at 2064.  Moreover, trial counsel’s decision to waive 
closing argument may have been a strategic decision in order to prevent the 
State from making a more persuasive argument in rebuttal.  See 
Ransonette v. State, 550 S.W.2d 36, 41 (Tex. Crim. App. 1976) (reasoning 
that waiver of final argument at punishment phase was trial strategy); Salinas 
v. State, 773 S.W.2d 779, 782-83 (Tex. App.—San Antonio 1989, pet. ref’d) 
(holding waiver of final argument at punishment stage “an exercise of 
reasonable professional judgment”).  Trial counsel’s decision to waive 
final argument without first obtaining Gonzales’s consent is also a decision 
left solely to the discretion of his attorney.  Notwithstanding this, the 
record is silent as to why trial counsel for Gonzales elected to waive closing 
argument.  Although Gonzales filed a motion for new trial, a hearing was 
not held on the motion.  Consequently, Gonzales’s allegation of 
ineffective assistance is not firmly founded in the record, and the record does 
not affirmatively demonstrate the alleged ineffectiveness.  See Thompson, 
9 S.W.3d at 813.  Accordingly, Gonzales has not overcome the strong 
presumption that his trial counsel rendered adequate assistance.  See 
Strickland, 466 U.S. at 690, 104 S. Ct. at 2066.  We overrule 
Gonzales’s first and second issues.[3]
        In 
Gonzales’s third issue, he complains of the trial court’s failure to grant a 
mistrial.  Gonzales did not request a mistrial—instead, the trial court 
did not sua sponte declare a mistrial—and Gonzales complains of this 
alleged error for the first time on appeal.  Accordingly, error is not 
preserved on this point.[4]  See Tex. R. App. P. 33.1(a)(1).  We 
overrule Gonzales’s third point.
VI. Conclusion
        Having 
overruled all of Gonzales’s issues, we affirm the trial court’s judgment.
   
  
                                                                  SUE 
WALKER
                                                                  JUSTICE
  
  
PANEL 
B:   DAUPHINOT, WALKER, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
March 3, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The medical examiner stated, “[T]he head wound was a contact wound of the 
medial forehead, meaning in the center of the forehead, and basically collapsed 
the skull, ejected the brain and I found fragments of what appeared to be a 
shotgun slug embedded in the neck.”
3.  
Gonzales also claims that his counsel’s waiver of closing argument violates 
article 2.03 of the Texas Code of Criminal Procedure, article I, section 10 of 
the Texas Constitution, and the Fifth, Sixth, and Fourteenth Amendments to the 
United States Constitution by depriving him of fundamental rights.  We have 
not located, and Gonzales has not cited, case law supporting these 
contentions.  For this reason, and because these arguments were not raised 
by motion for new trial in the trial court, we will not address them.  See 
Tex. R. App. P. 33.1(a)(1), 
38.1(h); see also Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. 
App. 2004); Rhoades v. State, 934 S.W.2d 113, 120-21 (Tex. Crim. App. 
1996).
4.  
A trial judge has the power to declare a mistrial sua sponte when a 
manifest necessity exists.  See Torres v. State, 614 S.W.2d 436, 442 
(Tex. Crim. App. [Panel Op.] 1981).  This is clearly not such a case.  
See Hill v. State, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002) (“Manifest 
necessity exists when the circumstances render it impossible to arrive at a fair 
verdict, when it is impossible to continue with trial, or when the verdict would 
be automatically reversed on appeal because of trial error.”).